FILED
2021 Sep-28  PM 04:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| FARIBA MOEINPOUR, | Civil Action No. |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| BOARD OF TRUSTEES OF THE UNIVERSITY OF ALABAMA, KELLY MAYER *in her individual capacity*, AND MARY JO CAGLE *in her individual capacity,* | |
| Defendants. | |

## **COMPLAINT FOR DAMAGES**

COMES NOW Fariba Moeinpour ("Plaintiff" or "Ms. Moeinpour"), by and through her undersigned counsel, and files this Complaint for Damages, showing the Court as follows:

## **JURISDICTION AND VENUE**

### 1.

Plaintiff invokes the jurisdiction of this court pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII"), Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000d, *et seq.* ("Title VI"), and,

against the individual defendants, pursuant to 42 U.S.C. § 1981, *et. seq.* ("Section 1981") directly and/or pursuant to 42 U.S.C. § 1983 ("Section 1983").

2.

Defendant Board of Trustees of the University of Alabama, for its division, the University of Alabama at Birmingham ("Defendant," "the Board," or "Defendant UAB") does business in this judicial district and the unlawful employment practices committed by Defendant that form the basis of this lawsuit were committed within this judicial district.

3.

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f).

## ADMINISTRATIVE PROCEDURES

4.

Plaintiff has fulfilled all conditions precedent necessary to proceed with this cause of action. Plaintiff filed a charge of discrimination with the EEOC on or about August 11, 2020, and the EEOC issued its Notice of Right to Sue, dated June 30, 2021, on or after that date.

5.

This action has been commenced within ninety (90) days of receipt of the Notice of Right to Sue.

## **PARTIES**

6.

Plaintiff is a Middle Eastern woman of Persian descent and Iranian national origin, a former employee of Defendant UAB, and is subject to the jurisdiction of this Court.

7.

Defendant UAB is a public university that is qualified and licensed to do business in Alabama and at all times relevant conducted business within this District.

8.

At all times relevant to this Complaint, Plaintiff was employed by and was an "employee" of Defendant UAB, as defined under Title VII.

9.

Defendant is now and, at all times relevant hereto, has been an entity engaged in an industry affecting commerce and in receipt of federal funds in the forms of student grants, student aid, research grants, and other sources of federal monies, as defined by Title VI.

10.

Plaintiff's salary was funded by a federal grant from the National Cancer Institute that had the "primary objective" of providing employment and as to which Plaintiff was an ultimate beneficiary with respect to her employment compensation.

11.

During all times relevant hereto, Defendant has employed 500 or more (500) or more employees for twenty or more weeks in either or both of the penultimate and final years of Plaintiff's employment.   Defendant is therefore covered under Title VII in accordance with 42 U.S.C. § 2000e(b) and 42 U.S.C. § 1981a(b)(3)(d).

12.

Defendant UAB may be served with process by delivering a copy of the summons and complaint to the following: (1) Chancellor Finis St. John IV at 500 University Boulevard East, Tuscaloosa, AL 35401; (2) President Ray L. Watts, M.D, at 1720 2nd Ave South, Birmingham, AL 35294; and/or (3) Attorney General's Office State of Alabama, 501 Washington Ave., Montgomery, AL 36104.

13.

Defendant Kelly Mayer ("Defendant Mayer") is a natural person over the age of 19 and is a citizen residing in the district.

14.

Defendant Mayer was Director of Employee Relations for UAB's Human Resources Department.

15.

Defendant Mayer may be served with process by delivering a copy of the summons and complaint to 3621 Hunters Hill Drive, Birmingham, AL 35210-3009.

16.

Defendant Mary Jo Cagle ("Defendant Cagle") is a natural person over the age of 19 and is a citizen residing in the district.

17.

Defendant Cagle was employed by Defendant UAB as an Administrator at all times relevant.

18.

Defendant Cagle may be served with process by delivering a copy of the summons and complaint to 349 Highland Park Dr. Birmingham, AL 35242-6840, Shelby County.

## FACTUAL ALLEGATIONS

19.

Defendant hired Ms. Moeinpour in or about February 2011, as a research scientist in the laboratory of Dr. Clinton J. Grubbs ("Dr. Grubbs"), Professor, Department of Surgery and Director of the Chemoprevention Center, at UAB School of Medicine.

20.

Ms. Moeinpour's position/salary was funded by federal grants from the National Cancer Institution ("NCI"), among others.

21.

Beginning in 2011, UAB, by and through Mary Jo Cagle, began engaging in severe or pervasive harassment of Ms. Moeinpour based on her national origin (Iranian) and race/ethnicity (Middle Eastern/Persian).

22.

Ms. Moeinpour was discriminated against, harassed, degraded, and retaliated against from February 2011 to February 2020 on a daily and weekly basis, despite repeated complaints to her supervisor and Human Resources.

23.

From Ms. Moeinpour's first day, when she was introduced to Defendant Cagle by her supervisor, Dr. Grubbs, Defendant Cagle began taunting Ms. Moeinpour about her race and national origin.

24.

Immediately after meeting her, Defendant Cagle began mocking Ms. Moeinpour's name and asked "what kind of messed up name is that"; stated that "it is a weird name"; that "we're going to have a hard time pronouncing it'; and that "all of you people from that part of the world have weird ass names." From that date until the end of Plaintiff's employment Defendant Cagle repeatedly harassed Ms. Moeninpour because of her race and national origin.

25.

Among the many acts of harassment by Defendant Cagle were repeated statements that, because of her race and national origin, Ms. Moeninpour is a "troublemaker", that she "doesn't fit in", that she is not "an American", and insults too numerous to make regarding the fact that she is from Iran. Plaintiff told Dr. Grubbs, her supervisor, that she was offended and that Defendant Cagle's conduct was unacceptable. Dr. Grubbs dismissed her complaints and told her to focus on her work.

26.

Over the next several years, Defendant Cagle continued her campaign of harassment unabated.  She told fellow employees that, because Ms. Moeninpour is a Middle Eastern woman from Iran, she is a non-believer in God, that she is stupid, and that she hated Ms. Moeinpour's accent.

27.

Defendant Cagle spat on the ground while walking past Ms. Moeninpour; told other employees not to accept her because she was Iranian; told Dr. Grubbs to get rid of Ms. Moeninpour; recruited fellow employees to help her in harassing and abusing Ms. Moeninpour; threatened and stalked her both inside and outside the work place; called her a "bitch"; told her to go back where she came from and that "our country does not need your kind."

28.

Defendant Cagle repeatedly stalked Ms. Moeinpour on her way to the restroom at work and stood outside her stall while she used the restroom and kick the door and yelled "Bitch, you have to leave this lab and go back to Iran!";  yelled at Ms. Moeinpour that she was a liar, although it was unclear what she was referring to; yelled that Dr. Grubbs need to "get her out of here" and "get rid of her"; and screamed "Iranian liar, liar, liar!" at her while laughing.

29.

Defendant Cagle became increasingly threatening to Ms. Moeinpour in more egregious and overt ways, including driving her car at Ms. Moeninpour and her daughter and brandishing a pistol against Ms. Moeninpour in the UAB parking deck while telling her that this is what "we" do to a "sand nigger."

30.

Some of these incidents referenced in paragraphs 25 through 29 occurred while Ms. Moeninpour was with her daughter or within her daughter's presence or hearing; many of them occurred in the presence of other employees or witnesses; and Ms. Moeninpour complained frequently and repeatedly to Dr. Grubbs and Defendant Mayer in Human Resources regarding Defendant Cagle's actions, to no avail.

31.

Other examples of Defendant Cagle's conduct, about which she complained to Human Resources, including asking another employee to get a gun and shoot at Ms. Moeinpour; telling co-workers (with regard to Ms. Moeinpour) that "We have a troublemaker. We need to get rid of her"; that she hates Ms. Moeinpour; that she needed to "go back where [she] came from"; and other conduct demonstrating her

desire to get Ms. Moeninpour out of the workplace at UAB because of Ms. Moeninpour's race and national origin.

32.

When Ms. Moeninpour reported these actions to Dr. Grubbs or asked him to do something about actions that had occurred in his presence, Dr. Grubbs said that "it is your word against hers," despite the fact that he was, himself, a witness to many of Defendant Cagle's actions; he told her to focus on her work and, in later years, began telling Ms. Moeninpour that he could do nothing about Defendant Cagle, that Defendant Cagle was dangerous and that he feared for his own life if he were to have her fired.

33.

Although the conduct engaged in by Defendant Cagle was so egregious it should have resulted in her immediate termination, instead, when Plaintiff complained to Defendant Mayer in Human Resources, she was ignored, rebuffed, and on at least one occasion told by Defendant Mayer to go see a psychologist. At no time did Defendant Mayer take any action to investigate or attempt to remedy Plaintiff's concerns about Defendant Grubbs.

34.

Despite Ms. Moeinpour's reports of discrimination to Defendant Mayer in Human Resources and to her supervisor, Dr. Grubbs, Defendant Cagle continued to discriminate, harass, and mock Ms. Moeinpour on a near-daily basis because she was Middle Eastern and from Iran.

35.

Ms. Moeninpour's daughter, Ms. Nicki Lawsen, witnessed several of Defendant Cagle's actions, including seeing her stalk Ms.  Moeinpour; was present when Defendant Cagle accelerated towards them in her car; and heard Defendant Cagle call her mother "sand nigger" while she was speaking to Ms. Moeninpour over the telephone.

36.

While at Summit Mall in 2019, mall employee Charles Coby had to intervene and call for security when he witnessed Defendant Cagle stalking and calling Ms. Moeinpour and her daughter "sand niggers."

37.

Some of Ms. Moeninpour's complaints to Defendant Mayer were by telephone and some of them were in writing, via email.  In response to Ms. Moeninpour's email about Defendant Cagle pulling a gun, she received an email

from Defendant Mayer asking her to call her. told her that she was crazy and needed to see a psychologist and that they could not hire a bodyguard for her. Despite Ms. Moeinpour's complaint of discrimination, Defendant Mayer chose to take no remedial action or investigate.

38.

The last incident involving Defendant Cagle occurred on February 10, 2020, when the bathroom nearest to Ms. Moeinpour's office was out of order.  As Ms. Moeinpour went to use another bathroom, Defendant Cagle saw her and began to follow her to the bathroom.  Seeing her, Ms. Moeninpour went to Dr. Grubbs' office and reported what had happened.  Dr. Grubbs again claimed he could do nothing about Defendant Cagle, saying she is dangerous and had threatened him as well and that she hated Ms. Moeninpour because she is from Iran.  When Ms. Moeinpour said she would go to the department chair and ask them to transfer her to a different lab because she was afraid of her hostile work environment.  Dr. Grubbs became agitated and asked her not to go because Dr. Chen would get involved, that he would lose his job or be killed or would kill himself.

39.

Dr. Grubbs then explained that he had previously told Defendant Cagle that if she did not stop treating Ms. Moeinpour badly, he was going to fire her and that, in

response, Defendant Cagle said that, if Dr. Grubbs fired her, she would not be the last person who visited him.   Dr. Grubbs then claimed that, the next day, four men came to his house, shoved him against the car, and said, "This is your second warning. If you do it again, there won't be a third one" and left.   He repeated this story on February 12, 2020, claiming that Defendant Cagle said that if he fired her, she would send men to kill him and that Defendant Cagle was in the mafia

40.

On February 13, 2020, Ms. Moeinpour called Dr. Grubbs and asked to speak with him about Defendant Cagle, and Dr. Grubbs said he would come to her office to speak.   Ms. Moeinpour asked him to please do something about Defendant Cagle, saying that she had reported Defendant Cagle's conduct to both him and to Human Resources and referred to his claim that she had even threatened his life.   She said that she was going to Dr. Chen and would report her to him.   While discussing her intention to go to Dr. Chen, Dr. Grubbs grew increasingly agitated, said he would lose his job, that they would ask why he hadn't reported her complaints, and that he would kill himself if that happened.   When she tried to persuade him that that was not the answer, he picked up the office phone and made a telephone call, during which he said "we have a disturbance" or words to that effect and hung up.

41.

When Ms. Moeninpour asked him who he called, he said he had called the police and that if she kept trying to complain, he would have her jailed, ruin her reputation and get her fired in order to shut her up about Defendant Cagle's actions. As had done in the past, he said that conversations between him and Ms. Moeninpour were his word against hers. When Ms. Moenipour responded by indicating she could prove what they had discussed, Dr. Grubbs grabbed Ms. Moeinpour by the chin and knocked her down, cutting her face with his nails and causing her to bleed. When Ms. Moeinpour fell to the floor, he fell on top of her and held her down. In an effort to get him off of her, Ms. Moeninpour slapped him.

42.

Dr. Grubbs stopped attacking Ms. Moeinpour, held his face and left the room. Several minutes later, Ms. Moeinpour was trying to compose herself in her office and heard a knock at the door and found UAB policemen with Dr. Grubbs, who was holding his face.

43.

The UAB police officers, Dr. Grubbs, and Christal Moore, executive administrator and human resources professional for UAB, met about Ms. Moeinpour in Dr. Grubbs' office while Ms. Moeninpour waited in hers. A police officer came

back to Ms. Moeinpour's office and asked her whether she slapped him, and she responded that she had, to try to make him stop attacking and groping her.  The police officer left and then came back asking her if she was in a relationship with Dr. Grubbs, which she denied.  After the meeting, a police officer instructed Ms. Moeinpour to lock her computer and follow him.

44.

While following the officer, Ms. Moeinpour observed Dr. Grubbs, HR representative Christal Moore, and the police together.  Ms. Moeinpour believed that she was going home as she followed the police officer out of the building.  Instead, the police officer put Ms. Moeinpour in his police car.   When Ms. Moeinpour asked where he was taking her, he responded that she was going to jail.

45.

After arriving at the jail, Ms. Moeinpour was not allowed to call her daughter. When she asked when she would be allowed to go home, she was told she would have to spend the night in jail.  Hearing this, Ms. Moeinpour fainted, at which point she was taken to the hospital.  When Ms. Moeinpour woke up, her ankle and wrists were handcuffed, and she was belted on a gurney in the emergency room.  Ms. Moeinpour relayed the events of the afternoon in full to the medical doctor, who

documented that her injuries were consistent with her report. She was ultimately transferred back to jail and held overnight.

46.

In a letter dated February 18, 2020, UAB terminated Ms. Moeinpour, without speaking to her. Defendant UAB claimed that it was terminating Ms. Moeinpour for violating its policy against fighting and absenteeism, despite knowing that Ms. Moeninpour had said she was attacked by Dr. Grubbs and without interviewing her or asked her for evidence to substantiate her claims.

47.

Defendant UAB did not investigate any of Ms. Moeinpour's claims.

48.

Defendant UAB did not speak to Ms. Moeinpour before terminating her.

49.

Ms. Moeinpour had reported numerous incidents involving Defendant Cagle to Defendant Mayer.

50.

Defendant Mayer did nothing to investigate any of Ms. Moeinpour's complaints.

51.

Defendant Mayer, in her role as HR Director for Employee Relations, had the authority to take remedial action and prevent or correct Defendant Cagle's actions against Ms. Moeinpour.

52.

Dr. Grubbs, in his role as supervisor of the lab, had the authority to take remedial action and prevent or correct Defendant Cagle's actions against Ms. Moeinpour.

53.

UAB's failure to act on complaints of harassment has created an environment where employees are aware that they should not report it or that reports will be ignored.

54.

Although Defendant UAB purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pretext. Defendant UAB was aware that Ms. Moeninpour had stated that she was trying to defend herself and stop her attacker; Defendant UAB, despite years of reports to Defendant Mayer in Human Resources, did nothing to investigate either these reports or to itself investigate her

statement that she had been attacked; and instead, Defendant UAB caused Ms. Moeninpur to be arrested, while letting Dr. Grubbs go free.

55.

Dr. Grubbs, in attacking Ms. Moeninpour and grabbing her mouth chin with such violence he left bleeding scratches on her face and in calling the UAB police and UAB Human Resources to claim that she had assaulted him, was attempting to silence Ms. Moeninpour to prevent her from complaining to Dr. Chen about Defendant Cagle.  But for Dr. Grubbs' actions to interfere in Ms. Moeninpour's efforts to complain about racial and national origin harassment, Ms. Moeninpour would have neither been arrested nor terminated.  Thus, Dr. Grubbs' retaliatory animus was a "but-for" cause of, or a determinative influence on, UAB's ultimate decision to arrest and then terminate Ms. Moeninpour.

56.

Dr. Grubbs was not terminated, and unrelated to these events, later retired from UAB.

57.

Defendant UAB did not seek to or cause Dr. Grubbs to be arrested.  Instead, even though he was the aggressor, no action was taken against him by the UAB police.

## COUNT I:  RACE/NATIONAL ORIGIN HARASSMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

*Against Defendant UAB*

58.

Plaintiff incorporates by reference and realleges paragraphs 6 through 47, 49 through 53 as if set forth herein.

59.

Defendant's actions in permitting Plaintiff to be subjected to severe or pervasive and ongoing racial harassment, despite her complaints, materially altered the terms and conditions of employment and constitutes unlawful discrimination on the basis of her national origin (Iranian) and race (Middle Eastern/Persian) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq.

60.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and its discrimination against Plaintiff was undertaken in bad faith.

61.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise adversely affected her status as an employee because of her national origin and race.

62.

As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has been made the victim of acts that have adversely affected her economic, psychological, and physical well-being.

63.

Accordingly, Defendant is liable for the damages Plaintiff has sustained because of Defendant's unlawful harassment.

## COUNT II:  RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

*Against Defendant UAB*

64.

Plaintiff incorporates by reference and realleges 40 through 57 as if set forth herein.

65.

Defendant's actions, as detailed above, in telling Plaintiff that Defendant Cagle was in the mafia and would cause bodily harm would deter a reasonable person from engaging in protected activity and is unlawful retaliation in violation of Title VII.

66.

Defendant's actions in having Plaintiff arrested when she was engaging in self-defense, while not arresting Dr. Grubbs for his physical attack, is retaliation in violation of Title VII.

67.

Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's retaliation against Plaintiff was undertaken in bad faith.

68.

Accordingly, Defendant is liable for the damages Plaintiff has sustained because of Defendant's unlawful retaliation.

## COUNT III: RACE/NATIONAL ORIGIN HARASSMENT IN VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964

*Against Defendant UAB*

69.

Plaintiff incorporates by reference and realleges paragraphs 6 through 47, 49 through 53 as if set forth herein.

70.

Defendant UAB is a direct recipient of federal financial assistance in the form of student aid, student grants, scholarships, research grants, and other forms of federal assistance as that term is defined by Title VI.

71.

Ms. Moeinpour's salary was funded by federal research grants that had the primary objective of providing employment and as to which she was a beneficiary of such financial aid.

72.

UAB's operations constitute a "program or activity" as defined by Title VI.

73.

Defendant's actions in permitting Plaintiff to be subjected to severe or pervasive and ongoing harassment, despite her complaints, materially altered the terms and conditions of her participation in a federally funded program or activity and constitute unlawful discrimination on the basis of her national origin (Iranian) and race (Middle Eastern/Persian) in violation of Title VI.

74.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal opportunity to participate in UAB's "program or activity" and has otherwise adversely affected her status as an employee in a federally funded position because of her national origin.

75.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and its discrimination against Plaintiff was intentional.

76.

As a direct and proximate result of Defendant's violation of Title VI, Plaintiff has been made the victim of acts that have adversely affected her economic, psychological, and physical well-being.

77.

Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful discrimination.

## COUNT IV: RETALIATION IN VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964

*Against Defendant UAB*

78.

Plaintiff incorporates by reference and realleges paragraphs 40 through 57 as if set forth herein.

79.

Defendant UAB is a direct recipient of federal financial assistance in the form of student aid, student grants, scholarships, research grants, and other forms of federal assistance as that term is defined by Title VI.

80.

Ms. Moeinpour's salary was fully funded by a federal grant by the National Cancer Institute, which had the primary objective of providing employment.

81.

UAB's operations constitute a "program or activity" as defined by Title VI.

82.

Defendant's actions, as detailed above, in causing Plaintiff to be arrested because of her protected activity are unlawful retaliation in violation of Title VII.

83.

Defendant's actions, as detailed above, in terminating Plaintiff because of her protected activity constitutes unlawful intentional retaliation in violation of Title VI.

84.

Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's retaliation against Plaintiff was intentional and therefore violated Title VI.

85.

Accordingly, Defendant is liable for the damages Plaintiff has sustained because of Defendant's unlawful retaliation.

## COUNT V: RACE/NATIONAL ORIGIN HARASSMENT IN VIOLATION OF 42 U.S.C. § 1981 PURSUANT TO 42 U.S.C. § 1983

*Against Defendant Mayer in Her Individual Capacity*

86.

Plaintiff incorporates by reference and realleges paragraphs 6 through 46 and 49 through 51 as if set out herein.

87.

Defendant Mayer acted under color of state law to deprive Plaintiff of her federally protected rights.

88.

The federally protected rights pursuant to 42 U.S.C. § 1981 include, among others, Ms. Moeinpour's right not to be discriminated against and harassed because of her race.

89.

Defendant Mayer, who was charged with investigating and remedying complaints of racial discrimination, instead knowingly permitted Plaintiff to be the victim of discrimination and harassment on the basis of her race (Middle Eastern/Persian).

90.

Defendant's actions in permitting Plaintiff to be subjected to severe or pervasive and ongoing harassment, despite her complaints, materially altered the terms and conditions of employment and constitutes unlawful discrimination on the basis of her race (Middle Eastern/Persian) in violation of 42 U.S.C. § 1981.

91.

The effect of the conduct was to deprive Plaintiff of economic opportunities and otherwise adversely affect Plaintiff's status as an employee, because of her race and/or national origin.

92.

As a direct and proximate result of these actions, Plaintiff has been made a victim of acts that adversely affected her psychological and physical well-being.

93.

As a direct and proximate result of Defendant Mayer's actions and deliberate, intentional inaction in the face of Plaintiff's complaints, Plaintiff has been embarrassed, humiliated and has suffered damage to her emotional health, and has lost back pay and front pay.

94.

Defendant Mayer has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith and in deliberate disregard of racially discriminatory and harassing conduct that violated clearly established law.

95.

Defendant chose not to take appropriate remedial steps to prevent or correct the harassment despite having the authority to do so as HR Director of Employee Relations, because of Plaintiff's race and in retaliation for her complaints of conduct violating 42 U.S.C. § 1981.

96.

Defendant acted by evil motive or intent, with malice, and in reckless and callous indifference to Plaintiff's federally protected rights. Plaintiff is entitled to punitive damages.

## COUNT VI:  RACE/NATIONAL ORIGIN HARASSMENT
## IN VIOLATION OF 42 U.S.C. § 1981

*Against Defendant Cagle directly, and to the extent that she is a state actor, in her individual capacity pursuant to 42 U.S.C. § 1983*

97.

Plaintiff incorporates by reference and realleges paragraphs 6 through 38 as if set out herein.

98.

Defendant Cagle subjected Plaintiff to severe or pervasive harassment on the basis of her race/ethnicity (Middle Eastern/Persian).

99.

To the extent necessary that Plaintiff proceeds under Section 1983, Defendant Cagle acted under color of state law to deprive Plaintiff of her federally protected rights.

100.

The federally protected rights include, among others,  Ms. Moeinpour's rights under 42 U.S.C. § 1981 not to be subjected to harassment and discrimination in employment on the basis of race, which rights are clearly established by binding legal precedent.

101.

Defendant Cagle's actions in subjecting Plaintiff to severe or pervasive ongoing harassment were intended to and did in fact materially interfere with Ms. Moeninpour's enjoyment of the contractual right to work free from such abuse and therefore constitute unlawful discrimination on the basis of race in violation of 42 U.S.C. § 1981.

102.

The effect of the conduct was to deprive Plaintiff of economic opportunities, and otherwise adversely affect Plaintiff in her contractual rights as an employee and because of her race and/or national origin.

103.

As a direct and proximate result of these actions, Plaintiff has been made a victim of acts that adversely affected her psychological and physical well-being.

104.

As a direct and proximate result of Defendant's interference in Plaintiff's enjoyment of the rights she held as an employee, Plaintiff has been embarrassed, humiliated, and has suffered damage to her emotional health, and has lost back pay and front pay.

105.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was intentional and undertaken in bad faith.

106.

Defendant acted by evil motive or intent, with malice, and in reckless and callous indifference to Plaintiff's federally protected rights. Plaintiff is entitled to punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment as follows:

(a)      General damages for mental and emotional suffering caused by Defendant's misconduct;

(b)      Reasonable attorney's fees and expenses of litigation;

(c)      Trial by jury as to all issues;

(d)      Prejudgment interest at the rate allowed by law;

(e)      All other relief to which he may be entitled.

[*Signature on Following Page*]

Respectfully submitted the 28th day of September, 2021

**BARRETT & FARAHANY**

Kira Fonteneau  ASB-7338-K58F
Amanda A. Farahany
Georgia Bar No. 646135
(*pro hac application to be filed*)
Matthew C. Billips
Georgia Bar No. 057110
(*pro hac application to be filed*)
Grace A. Starling
Georgia Bar No. 464958
(*pro hac application to be filed*)

*Attorneys for Fariba Moeinpour*

1100 Peachtree Street, N.E., Suite 500
Atlanta, GA 30309
(404) 214-0120
(404) 214-0125 Facsimile
kira@justiceatwork.com
amanda@justiceatwork.com
matt@justiceatwork.com
grace@justiceatwork.com