UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **FARIBA MOEINPOUR,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 2:21-cv-01302-RDP |
| } | |
| **BOARD OF TRUSTEES OF THE** } | |
| **UNIVERSITY OF ALABAMA, et al.,** } | |
| } | |
| **Defendants.** } | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Plaintiff's Motion for Reconsideration, or, Alternatively, Acceptance of Remittitur, or Motion for Certification of Interlocutory Appeal. (Doc. # 226). In the Motion, Plaintiff asks the court to "either (1) reconsider its January 15, 2025 ruling under 54(b)[1] of the Federal Rules of Civil Procedure; (2) allow Plaintiff to accept a remittitur of her jury award to the applicable damages cap under Title VII against UAB plus equitable relief, pursuant to controlling Eleventh Circuit law; (3) limit the new trials to the issue of damages; or (4) certify its January 15, 2025 ruling as appealable pursuant to 28 U.S.C. § 1292(b)." (Doc. # 226 at 3).

Plaintiff argues that this court erred by granting a new trial because the court wrongly compared the full amount (rather than the statutorily capped amount) of the jury verdict against UAB to the jury verdict against Cagle (*id.* at 7-8), concluded that violations of the Order in Limine biased the jury despite limiting instructions (*id.* at 16-20), substituted its judgment for that of the jury (*id.* at 8-13), reversed its earlier decision not to sever the trials (*id.* at 13-16), and granted a

---

[1] Federal Rule of Civil Procedure 54 does not apply because the court's January 15, 2025 Order was not an "order from which an appeal lies." Fed. R. Civ. P. 54(a); *Dillard Dept. Stores, Inc. v. Fidelity Union Life Ins. Co.*, 508 F.2d 331, 331-32 (5th Cir. 1975). Fifth Circuit decisions rendered before the close of business on September 30, 1981, are binding precedent. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981). This is not the first time in this case that Plaintiff has moved for reconsideration of a non-appealable order under Rule 54(b) as well as for an interlocutory appeal of the same order. (*See* Doc. # 114 at 1 & n.1).

new trial after delaying entry of judgment. (*Id.* at 20-21). Plaintiff also argues that this court erred by not offering her the option to accept remittitur in lieu of two new trials (*id.* at 21-22), and that any new trial should be limited to the issue of damages, not liability. (*Id.* at 22-24). Alternatively, Plaintiff argues that the court should certify for interlocutory appeal the issue of comparing capped versus uncapped verdicts. (*Id.* at 24-26). The Motion has been fully briefed (Docs. # 226, 227, 228, 229, 230) and is ripe for a decision. For the reasons stated below, the Motion (Doc. # 226) is due to be denied.

I.   **Background**

The facts and trial testimony in this case are described in more detail in the Memorandum Opinion accompanying the Order that Plaintiff asks this court to reconsider. (*See* Doc. # 224). In brief, Fariba Moeinpour ("Plaintiff") was employed as a researcher by the University of Alabama at Birmingham ("UAB") from 2005 until 2020 and alleges that one of her coworkers, Defendant Mary Jo Cagle ("Cagle"), engaged in race-based harassment against her. (*See* Doc. # 122 at 2-3). Plaintiff claims this harassment interfered with her ability to do her job. (*Id.*). Plaintiff further alleges that, after she made various complaints about Cagle, she told her supervisor Dr. Clinton Grubbs ("Dr. Grubbs") that she would report the matter up the chain. (*Id.* at 3; Doc. # 208 at 114). That day, Dr. Grubbs called the UAB police, who arrested Plaintiff and charged her with Domestic Violence in the Third Degree. (Doc. # 122 at 3).

In September 2024, the case was tried to a jury. At trial, Plaintiff presented two claims: (1) she was subjected to severe or pervasive harassment by Cagle based on her race in violation of 42 U.S.C. § 1981, and (2) UAB retaliated against her when Dr. Grubbs "attacked" her and called the UAB police to prevent Plaintiff from reporting Cagle's race-based harassment. (Doc. # 1 at 3-9).

At the conclusion of the trial, on September 9, 2024, the jury returned a verdict in favor of Plaintiff and against Cagle in the amount of $825,000 ($500,000 in compensatory damages and

$325,000 in punitive damages) (Doc. # 195), and a verdict in favor of Plaintiff and against UAB in the amount of $3,000,000 (compensatory damages only). (Doc. # 196).

On September 13, 2024, the court entered an order closing the case and stating that "[t]he court is not entering judgment on these verdicts because (1) as the court referenced after the jury verdicts were returned, they are subject to post-trial motions, and (2) at least the verdict against UAB must be reduced." (Doc. # 202 at 1). On October 8, 2024, Plaintiff filed a Motion for Equitable Relief (Doc. # 217), UAB filed a Motion for Judgment as a Matter of Law and a Motion for a New Trial (Doc. # 214), and Cagle filed a Motion for Judgment as a Matter of Law, Motion for New Trial, and Motion for Remittitur (Doc. # 215). On January 15, 2025, the court ruled on these motions, ordering a new trial that will be severed as to the claims against UAB and Cagle. (Doc. # 225). On January 27, 2025, Plaintiff filed the instant Motion (Doc. # 226) that, among other things, asks the court to reconsider its Order.

## II.     Standard of Review

### A.     Motion for Reconsideration Under Rule 54(b)

Rule 54(b) only applies to a "[j]udgment," which is defined as an "order from which an appeal lies." Fed. R. Civ. P. 54(a). The grant or denial of a motion to reconsider is left to the discretion of the district court. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023-24 (11th Cir. 2000). Motions for reconsideration are a disfavored, extraordinary remedy that should be employed sparingly. *See, e.g.*, *Iberiabank v. Case Constr., LLC*, 2015 WL 5457889, at *2 (S.D. Ala. Sept. 16, 2015) ("Motions to reconsider are disfavored in federal court and are granted only in narrowly circumscribed circumstances."). As one court in this circuit has noted, motions to reconsider are permissible "only when one of the following has occurred: an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice." *Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218, 1247 (S.D. Ala. 2008) (citations

3

and internal punctuation omitted). While a court may reconsider a prior order, "courts should be loath to do so in the absence of extraordinary circumstances." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1370 (11th Cir. 2003) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)).

      **B.**      **Motion for Certification of Interlocutory Appeal**

Section 1292(b) allows for discretionary appellate review of a district court's interlocutory order upon certification by the district court "that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). A certified interlocutory appeal is a "rare exception" to the rule that appellate review is to be conducted after final judgment. *See McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1264 (11th Cir. 2004); *see also OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1359 (11th Cir. 2008) (noting that § 1292(b) "sets a high threshold for certification to prevent piecemeal appeals" and that "[m]ost interlocutory orders do not meet this test"). When an appeal will be dependent on facts and not law, § 1292(b) certification is not due to be granted. *See English v. City of Gainesville*, 74 F.4th 1151, 1156 (11th Cir. 2023) (holding that a circuit court lacks jurisdiction over an interlocutory appeal where the appeal raises only "issues of evidentiary sufficiency," which were "questions of fact, not law").

A party seeking certification bears the burden of persuading the court "that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978) (citation and internal quotation marks omitted). "[T]he appeal from interlocutory orders . . . should and will be used only in exceptional cases where decision of the appeal may avoid protracted and expensive litigation . . . where a question which would be dispositive of the litigation is raised and there is

4

serious doubt as to how it should be decided." *McFarlin*, 381 F.3d at 1256 (citation omitted). Certification is, by a wide margin, the exception, not the rule. "Because permitting piecemeal appeals is bad policy, permitting liberal use of § 1292(b) interlocutory appeals is bad policy." *Id.* at 1259. "Routine resort to § 1292(b) requests would hardly comport with Congress's design to reserve interlocutory review for 'exceptional' cases while generally retaining for the federal courts a firm final judgment rule." *Caterpillar v. Lewis*, 519 U.S. 61, 74 (1996) (internal quotation marks omitted).

### III.  Analysis

#### A.  Motion for Reconsideration under Rule 54(b)

Plaintiff argues that this court erred by granting a new trial because the court wrongly compared the full amount (rather than the capped amount) of the jury verdict against UAB to the jury verdict against Cagle (Doc. # 226 at 7-8), concluded that violations of the Order in Limine biased the jury despite limiting instructions (*id.* at 16-20), substituted its judgment for that of the jury (*id.* at 8-13), reversed its earlier decision not to sever the trials (*id.* at 13-16), and granted a new trial after delaying entry of judgment. (*Id.* at 20-21). Plaintiff also argues this court erred by not offering her the option to accept remittitur in lieu of two new trials. (*Id.* at 21-22).

##### 1.  Rule 54(b) is Inapplicable

The court's grant of a new trial on the claims against Cagle and UAB was not a "[j]udgment" or "any order from which an appeal lies," as required for application of Rule 54(b). Fed. R. Civ. P. 54(a). The Eleventh Circuit has repeatedly held that an order granting a motion for a new trial is not appealable. *United States v. Myrie*, 776 F.3d 1280 (11th Cir. 2015) (citing *United States v. Martinez*, 763 F.2d 1297, 1308 (11th Cir. 1985)); *Dillard Dept. Stores, Inc. v. Fidelity Union Life Ins. Co.*, 508 F.2d 331, 331-32 (5th Cir. 1975) ("An order granting a new trial is

5

generally not appealable because such an order is interlocutory . . . ." (quoting *Wiggs v. Courshon*, 485 F.2d 1281, 1282 (5th Cir. 1973))). Therefore, Rule 54(b) is inapplicable here.

## 2. A New Trial is Warranted on Plaintiff's Claims Against UAB

Notwithstanding that a Rule 54(b) Motion is inapplicable to a grant of a new trial, there are also reasons on the merits to deny Plaintiff's Motion. The court previously ordered a new trial for UAB "based on excessive compensatory damages, prejudice due to the combined trial of claims against UAB and Cagle, and Plaintiff's violations of the court's Order on Motions in Limine." (Doc. # 224 at 17). Upon reconsideration, the court concludes again that these reasons were correct and, in any event, that there has been no intervening change in controlling law, no new evidence, and no clear error or manifest injustice.

The first legal error Plaintiff argues is that the court wrongly evaluated the full verdict against UAB rather than the $300,000 statutorily capped damages. (Doc. # 226 at 7-13). There is an interesting question lurking here. When a jury returns a verdict that is ten times the statutory cap, does it demonstrate excessiveness even though (unbeknownst to the jury) the verdict will be reduced by $2.7 million? The court concluded that it did, and upon reconsideration comes to the same conclusion. That is because a verdict this size based on this evidence indicates that the jury was biased against UAB, particularly given the problems experienced in the trial that were previously highlighted by the court and are discussed again in this order. That bias rendered the trial unfair and necessitates a new trial. It was not legal error for the court to consider the full awarded verdict on this question; indeed, Plaintiff herself acknowledges that there is no binding precedent that indicates otherwise. (*Id.* at 7).[2]

---

[2] Plaintiff cites only out-of-circuit case law to argue that the court was wrong to consider the uncapped verdict as evidence of excessive damages. The first case Plaintiff cites, *Depaoli v. Vacation Sales Assocs., LLC*, 489 F.3d 615 (4th Cir. 2007), held that a district court did not abuse its discretion in holding that the actual (reduced) damages awarded were not excessive (even though the verdict had been higher). *Id.* at 620. Because this decision was affirmed, it merely speaks to how this court *could* exercise its discretion to grant a new trial. The second and third cases do not

On this point, Plaintiff also argues that the court "completely disregarded Dr. Thurstin's testimony" in concluding that damages against UAB were excessive. (*Id.* at 11). This is an exceedingly curious argument, inasmuch as the court repeatedly discussed the content of Dr. Thurstin's testimony in its Memorandum Opinion. (Doc. # 224 at 6, 16). In any event, an excessive award of damages against UAB was only one of multiple reasons that supported the grant of a new trial for UAB.[3]

The court also granted a new trial because of "prejudice due to the combined trial of claims against UAB and Cagle." (Doc. # 224 at 17). Regarding this ground for a new trial, Plaintiff argues that the court already "had an opportunity to sever the trials, approximately *seven (7) months ago* and three (3) months before the initial trial of this matter." (Doc. # 226 at 13) (emphasis in original). Plaintiff appears to be scolding the court for changing its mind,[4] even though, ironically, that is exactly what Plaintiff urges the court to do now.

In any event, the court has the discretion to deny a severance before trial and then grant a severance after trial. This is particularly so when the court has the benefit of evaluating how the first trial was adversely affected based on the decision not to sever the claims. During the trial, the court observed the type and amount of evidence presented, as well as how it influenced the jury. Because the trial was combined, the jury heard inflammatory evidence that would have otherwise been inadmissible against UAB. In a severed trial, all that would be required to establish protected conduct (part of a retaliation claim) is that Plaintiff made a complaint about Cagle's harassment

---

address the question of granting a new trial at all. *See Peyton v. DiMario*, 287 F.3d 1121 (D.C. Cir. 2002); *Luciano v. Olsten Corp.*, 110 F.3d 210 (2d Cir. 1997).

[3] If excessive damages were the only basis for the court's grant of a new trial, the court would further analyze the issue of whether the proper comparison here is a statutory cap on damages. But, the excessive damages are not the only basis for granting a new trial.

[4] Plaintiff also accuses the court of improperly considering the jury's post-trial comments about their reasoning. (Doc. # 226 at 15). The court did not consider these comments. (*See generally* Doc. # 224).

and had a good faith basis for doing so. But during this trial, the jury heard Plaintiff detail years of Cagle's harassment and how Plaintiff complained to UAB human resources, all seemingly without a response from UAB.[5] It is not hard to understand how this biased the jury against UAB. In a severed trial, much of this evidence would have been excluded due to the danger of "unfair prejudice" and "needlessly presenting cumulative evidence." Fed. R. Evid. 403. The decision to grant a new trial and to sever a trial is committed to the district court's sound discretion. *See Davis v. White*, 2022 WL 22895710, at *2 (N.D. Ala. July 28, 2022) (new trial); *United States v. Lopez*, 649 F.3d 1222, 1235-36 (11th Cir. 2011) (severance). The court therefore is properly exercising its broad discretion to take stock of new information about how the trial unfolded in determining how the new trial will be conducted.

The court also correctly concluded (and again concludes) that UAB was prejudiced by violations of the Order in Limine. A district court has "the broadest discretion in determining whether evidence should be excluded under Rule 403." *United States v. Costa*, 947 F.2d 919, 924 (11th Cir. 1991) (quoting *Borden, Inc. v. Fla. East Coast Ry. Co.*, 772 F.2d 750, 756 (11th Cir. 1985)). The court used this discretion to issue its Order in Limine. It is rare for a party to violate an in limine order. Here, Plaintiff did so twice, and the second time was at the bidding of her attorney. Although the court gave limiting instructions both times, the jury still awarded an excessive verdict against UAB. This suggests (and, based on its over twenty years of experience on the bench, the court determined) that there is sufficient cause to be concerned that the jury did not follow the court's limiting instructions. Therefore, the court properly exercised its broad discretion to manage evidentiary matters by granting a new, severed, trial.

---

[5] Because any evidence about UAB's response to Plaintiff's complaints was irrelevant to a retaliation claim, UAB did not present such evidence.

8

Additionally, a new trial was certainly warranted due to the *combined* prejudicial effect of these independent grounds: excessive damages, prejudice due to a combined trial, violations of the Order in Limine, and concerns about the jury's disregard of the court's curative instructions. Other district courts have granted new trials when there existed multiple grounds to do so. *See, e.g.*, *Alphamed Pharms. Corp. v. Arriva Pharms., Inc.*, 432 F. Supp. 2d 1319, 1356-57 (S.D. Fla. 2006) (granting a new trial due to "the jury's willingness to disregard [the court's] clear instruction" and a party's improper use of inadmissible evidence); *Batchelor v. Geico Casualty Co.*, 142 F. Supp. 3d 1220, 1244-45 (M.D. Fla. 2015) (granting a new trial due to the "unfairness" of waiving its attorney-client privilege in trial without providing sufficient opportunity for the opposing party to review documents under the waiver, as well as the plain prejudice of the testimony waiving the privilege).

For the above reasons, the court declines to change its order of a new trial on Plaintiff's claims against UAB.

### 3.     The Court's Delay in Entry of Final Judgment was Proper

Regarding the question of whether the court improperly delayed entry of final judgment, Plaintiff argues that this was an abuse of discretion,[6] citing inapplicable and non-binding precedent from the Sixth Circuit and a district court.[7] The Sixth Circuit case held that a six-month delay in

---

[6] Plaintiff's counsel also inexplicably implies that the court manipulated the clock for filing post-trial motions by delaying entry of judgment, as Defendants' post-trial motions would have been filed one day late had the court promptly entered judgment. (Doc. # 226 at 20 n.7). In making this accusation, Plaintiff ignores two key points. First, Defendants filed their motions according to the post-trial briefing schedule that all parties – including Plaintiff – agreed to in a post-trial conference. (*See* Doc. # 198). If such a briefing schedule had not been put in place, is there any question Defendants would have had their motions on file a day earlier? Second, it is not lost on the court that had the court entered judgment immediately after the verdict, as Plaintiff asserts the court should have done, *Plaintiff's* post-trial motion would also have been filed a day late. (*See* Doc. # 217 (filed October 8, 2024)). Frankly, counsel's sophomoric suggestion otherwise is so off the chain that it is undeserving of any further response other than to note that Plaintiff's counsel's response to this courtesy is another symptom of how the profession needs a reset in certain corners.

[7] The district court case was an unpublished decision from the Middle District of Florida that cited *Kiphart* as "particularly instructive" before offering this dicta: "If the Court were to have delayed entry of judgment until the

entering judgment coupled with "no explanation" was improper and warranted post-judgment interest after reversal of a judgment as a matter of law. *Kiphart v. Saturn Corp.*, 251 F.3d 573, 587 (6th Cir. 2001). Even under this non-binding standard, the court did not improperly delay entry of judgment because it had a reason for the delay and explained its decision. The court stated that the judgment was "subject to post-trial motions" and that "at least the verdict against UAB must be reduced." (Doc. # 202 at 1). Ordering a $3 million judgment against UAB when the statutory cap merited one-tenth of that amount would have been erroneous and nonsensical. So, here, instead of *sua sponte* ordering judgment based on a remitted amount, the court waited to review briefing on these issues given the complications surrounding this trial. Not only was there a good reason to delay entry of judgment, but also, some delay in reviewing post-trial motions was inevitable. This is not the only case on the court's docket, and immediately after this trial the court presided over additional trials and proceedings. One of those trials involved a scheme to assassinate an Assistant United States Attorney. Finally, it is unclear what remedy Plaintiff desires. In *Kiphart* the Sixth Circuit panel awarded post-judgment interest. But, no post-judgment interest would be due here because the court has ordered a new trial.

### 4. Remittitur is Not Warranted and the New Trial is Not Limited to Damages

Plaintiff also quibbles with the court's conclusion that the best use of judicial resources is to grant a new trial severed into two trials. Specifically, Plaintiff contends that the court should allow Plaintiff an opportunity to accept remittitur because this would be a more efficient use of judicial resources. (Doc. # 226 at 21-22). However, there is no indication here that the jury's bias

---

resolution of Defendants' post-trial motions, such conduct would have constituted an abuse of this Court's discretion." *Hako-Med USA, Inc. v. Axiom Worldwide, Inc.*, 2010 WL 2179024, at *5 (M.D. Fla. May 28, 2010). The court finds this non-binding and unpublished decision also is not persuasive, in large part because it does not discuss the nuances of *Kiphart* as outlined above.

against UAB was limited to damages. There is no unfair prejudice in having to try this case again and ensuring that the fact finders' liability determination is untainted. In any event, the choice between a new trial and a remittitur is discretionary, and the court properly used its discretion to order a new trial. *See Wilson v. Taylor*, 733 F.2d 1539, 1550 (11th Cir. 1984) ("Although in many cases a court will grant a new trial where the award of damages by the jury is excessive, the court *may*, *in its discretion*, 'use the remittitur practice.'" (emphasis added)).

### 5.     A New Trial is Warranted on Claims Against Cagle

There are also reasons on the merits to deny Plaintiff's Motion regarding a new trial on claims against Cagle and to deny Plaintiff's request that this trial be limited to damages. The court ordered a new trial for Cagle because "at least one of the violations of the Order on Motions in Limine [] prejudiced Cagle." (*Id.* at 28). Upon reconsideration, the court concludes (again) that this reasoning was correct and that there have been no intervening changes in controlling law, no new evidence, and no clear error or manifest injustice.

Plaintiff argues that the violations of the Order in Limine do not merit a new trial for Cagle because the statement about Dr. Grubbs's orientation "involved no mention of Cagle." (Doc. # 226 at 18 n.5). Plaintiff also argues that "[t]here was no intent to inflame the jury by this testimony, or evidence it did inflame the jury." (*Id.* at 18). As the court explained in its Memorandum Opinion (Doc. # 224), the statement about Dr. Grubbs's sexual orientation could have prejudiced Cagle even though it did not mention Cagle because, at a minimum, it was highly distracting. As recognized by Federal Rule of Evidence 403, evidence can be inadmissible because "its probative value is substantially outweighed by a danger of . . . confusing the issues[ or] misleading the jury." Fed. R. Evid. 403.

Further, Plaintiff's assertion that there is no evidence this statement inflamed the jury is simply that: a bald assertion. That Plaintiff's counsel, who obviously is neither neutral nor

11

disinterested in the outcome of this matter, opines that they would exercise their discretion differently than the court has here, is unsurprising and, at the same time, not a ground for reconsideration.

Finally, Plaintiff cannot escape the consequences of violating the court's Order in Limine by arguing that the Order was wrong or that her violations were not damaging or prejudicial. Because Plaintiff and her counsel separately and concurrently violated the court's crystal clear Order, the jury heard inflammatory and distracting evidence. The court concludes that this, along with the other concerns related to the trial, merits a new trial, notwithstanding the jury instructions that the court had hoped would be curative. Plaintiff and her counsel complain forcefully about the court's grant of a new trial. But, at least in respect to this issue, they have no one to blame but themselves.

### B.     Motion for Certification of Interlocutory Appeal

Plaintiff alternatively moves the court to certify its ruling for interlocutory appeal on the following questions: "Whether the district court abused its discretion in delaying entering judgment at the capped amount under Title VII as to UAB and granting Defendants' motions for new trials." (Doc. # 226 at 24).

#### 1.     The Proposed Questions are Not Controlling Questions of Law

"[T]he text of § 1292(b) requires that resolution of a 'controlling question of law . . . may materially advance the ultimate termination of the litigation.'" *McFarlin*, 381 F.3d at 1259 (quoting 28 U.S.C. § 1292(b)). "This is not a difficult requirement to understand. It means that resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation." *Id*. (citing 16 Charles Alan Wright, et al., Federal Practice & Procedure § 3930 at 432 (2d ed. 1996)). An answer from the Eleventh Circuit to the questions posed would not serve to avoid a new trial or otherwise substantially advance this litigation. This is a run-of-the-

mill employment case involving the grant of a new trial, not the type of exceptional legal question for which § 1292(b) is reserved – *i.e.*, where a decision on a controlling question of law as to which there is a substantial ground for difference of opinion such that an immediate appeal may avoid protracted and expensive litigation. The grant of a new trial here is simply the exercise of discretion by a trial court based on the unique circumstances of the September 2024 trial. Such discretionary decisions are made by the judiciary too many times each business day to count. Additionally, it is not clear how resolution of the question on delaying entry of judgment would avoid a new trial. This question might have been more relevant if post-judgment interest were due, or perhaps after an appellate court reversed a judgment as a matter of law. *See Kiphart*, 251 F.3d at 587. No post-judgment interest is due here because it is due to be retried. Finally, the court's decision to grant a new trial did not merely rest on the excessiveness of the verdict, so certifying this question would not avoid any retrial.

## 2. There Is No Substantial Ground for Difference of Opinion

Substantial ground for difference of opinion exists when a legal issue is (1) difficult and of first impression, (2) the district courts of the controlling circuit are split as to the issue, or (3) the circuits are split on the issue. *Ga. State Conf. of NAACP v. Fayette Cnty. Bd. of Comm'rs*, 952 F. Supp. 2d 1360, 1362 (N.D. Ga. 2013); *see also United States ex rel. Powell v. Am. InterCont'l Univ., Inc.*, 756 F. Supp. 2d 1374, 1378-79 (N.D. Ga. 2010) (citing *In re Scientific-Atlanta, Inc. Sec. Litig.*, 2003 WL 25740734 at *1 (N.D. Ga. Apr. 15, 2003) (Story, J.)) ("[N]either the mere lack of authority on the issue nor the claim that the district court's ruling is incorrect constitutes a substantial ground for difference of opinion."). None of these circumstances are present here. These questions are not unique or difficult. (Again, district courts exercise this type of discretion all the time.) District courts in this circuit are not split on these issues.

### 3. An Interlocutory Appeal Will Not Materially Advance the Termination of This Litigation

Where "[c]ertification is unlikely to significantly limit discovery or dispense of all or even most claims in this matter, [it] is thus unwarranted." *Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assocs., P.C.*, 165 F. Supp. 3d 1330, 1340 (N.D. Ga. 2015) (citing *McFarlin*, 381 F.3d at 1259 (certification must "serve to avoid a trial or otherwise substantially shorten the litigation.")). Here, certification under § 1292(b) would cause delays, not avoid them. First, the Eleventh Circuit would have to consider whether to grant the petition. That would require briefing. Second, the Circuit would have to assess the parties' arguments, even in the unlikely event a petition were to be granted. Our Circuit is near the top of all courts of appeals in its efficiency. But, even if it proceeded in its usual efficient manner, there would be a delay in resolving this litigation. It is unlikely that certification and appeal would avoid retrial, particularly given the discretionary call this court is authorized to make – and has made – about the need for a new trial and the circuit court's deference to a district court's exercise of discretion in these matters. It is exceedingly improbable that the Eleventh Circuit would certify a question under § 1292(b) as to whether a district court abused its discretion in granting a motion for a new trial. Finally, concerns regarding the possibility of error correction and arguments about an interlocutory appeal on the court's orders in limine are off the mark. (*See* Doc. # 226 at 26). Those concerns are present in virtually every case, yet certification is reserved only for truly exceptional cases. Therefore, Plaintiff has not shown that this is the exceptional case warranting certification for interlocutory appeal.

**IV.     Conclusion**

For the reasons outlined above, Plaintiff's Motion for Reconsideration, or, Alternatively, Acceptance of Remittitur, or Motion for Certification of Interlocutory Appeal (Doc. # 226) is

**DENIED**.

In conclusion, the court offers a word to the wise. When one confronts a ruling with which they disagree, it is best to divorce emotion from legal arguments for reconsideration. The court's decision on Plaintiff's Motion would have been the same regardless of the Motion's tone, but its tone did not go without notice. The advocacy here bordered on inappropriate. Plaintiff bolded and italicized standards that she argued the court had misapplied or ignored (Doc. # 226 at 6, 7, 8, 10, 11, 12), accused the court of conducting "analysis [that] was solely comprised of speculation" (*id.* at 15; *see also id.* at 17), and implied that the court committed an "abuse of discretion" because "there was no reason for delaying entry of judgment . . . and the court's delay resulted in inequity and unfairness to the Plaintiff." (*Id.* at 21). Wise practitioners avoid crossing the line between zealous representation of their clients by raising sound arguments for reconsideration and pejorative (and, in this case, misplaced) advocacy that disrespects the court and its rulings. Plaintiff and her lawyers boldly sprinted across that line with their filing. The court counsels them in the future to base their arguments on law and reason, not emotion.

**DONE** and **ORDERED** this February 28, 2025.

_____
**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE